Monnat & Spurrier, Chartered
200 West Douglas, Suite 830
Olive W. Garvey Building
Wichita, Kansas 67202
Telephone: (316) 264-2800
Facsimile: (316) 264-4785

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:25-cr-10053-EFM |
| | ) | |
| RUSSELL SCOTT IV, | ) | |
| Defendant. | ) | |
| | ) | |

**MOTION FOR DOWNWARD VARIANCE AND
SENTENCING MEMORANDUM IN SUPPORT THEREOF**

COMES NOW, the defendant, Russell Scott IV, through his counsel, Eli O'Brien, of Monnat & Spurrier, Chartered, and respectfully submits this sentencing memorandum in support of his request that the Court exercise its discretion to impose a sentence below the advisory guideline range, but which would still be "sufficient, but not greater than necessary" to fulfill the sentencing goals established by Congress. 18 U.S.C. § 3553. In support thereof, Mr. Scott argues that when the seriousness of the offense and the public's interest is properly counterbalanced against Mr. Scott's personal characteristics, including his long history of serving his community and the aberrant nature of this offense from his nature as a rule-follower, a downward variance from Mr. Scott's guidelines range is warranted.

**INTRODUCTION**

This case comes for sentencing after Russell Scott IV accepted responsibility for his actions and entered a plea agreement in which the government is requesting Mr. Scott be imprisoned for a duration at the low end of his guidelines score while Mr. Scott is allowed to ask for a more lenient sentence. Based on Mr. Scott's history and the severity of the instant offense, Mr. Scott's guideline imprisonment range is 87 months to 108 months. Mr. Scott understands that this court is not bound by the plea agreement, and may impose the maximum penalty allowed by law, and with this understanding, Mr. Scott respectfully requests the court order a sentence outside the guidelines and impose a 5 year probationary sentence.

In determining the appropriate sentence, a district court "shall consider . . . the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A). And yet, while this Court must still correctly calculate the guideline range, it may not treat that range as mandatory or presumptive, but rather only "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Gall v. United States*, 552 U.S. 38, 49, 51 (2007); *Kimbrough v United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors" to "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. *Gall*, 552 U.S. at 53-60; *Pepper v. United States,* 131 S. Ct. 1229, 1242-43 (2011). The Court's overarching duty is to impose a sentence sufficient, but not greater than

necessary to accomplish the sentencing goals set forth by statute. *Pepper*, 131 S. Ct. at 1242-43 (§ 3553(a)).

Any sentence imposed must properly and sufficiently punish Mr. Scott's offense but involve no greater deprivation of liberty than is reasonably necessary to implement Congress's statutorily-mandated sentencing goals. As will be set forth *infra* and at Mr. Scott's sentencing hearing, the factors and circumstances presented in Mr. Scott's case cannot bear the weight of an excessively long within-guideline sentence.

Mr. Scott respectfully asks this Court to exercise its discretion by granting his motion for a downward variance and imposing a probationary sentence in lieu of imprisonment. Mr. Scott respectfully asserts that such a sentence is "sufficient, but not greater than necessary" to serve the sentencing purposes under § 3553(a).

## ARGUMENT AND AUTHORITIES

**I.      Given the nature and circumstances of Mr. Scott's offense, as well as his history and characteristics, the sentence requested is sufficient, but not greater than necessary to satisfy the purposes of sentencing, promote respect for the law, afford adequate deterrence, and avoid unwarranted sentencing disparities.**

For a sentence to be just, it must fit not only the crime but also the offender. *United States v. Huckins*, 529 F.3d 1312, 1316 (10th Cir. 2008). In truth, a key component of Supreme Court holdings, designed to ensure that the Guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." **Kimbrough v. United States**, 552 U.S. 85, 101-02 (2007) (internal

3

punctuation omitted); citing **Rita v. United States**, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). As the Supreme Court held in **Kimbrough**, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 552 U.S. at 91, 109-10; *see also* **Spears v. United States**, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

Hence, Congressionally-directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. In **Vazquez v. United States**, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under § 3553(a)." U.S. Br. at 11, **Vazquez v. United States**, No. 09-5370 (Nov. 2009). "*[A]ll* of the sentencing guidelines are advisory," including those directed by Congress. **United States v. Michael**, 576 F.3d 323, 327 (6th Cir. 2009) (emphasis in original). Congressional directives "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a

4

particular Guidelines range is not a mandate that sentencing courts stay within it." *Id*. at 328.

There is no question that the nature of Mr. Scott's conviction is serious. The mitigating facts and circumstances unique only to Mr. Scott will be argued in full at sentencing. In this case, there are numerous mitigating factors that, when taken as a whole, support the conclusion that a below-guideline sentence of five (5) years' probation is sufficient, but not greater than necessary to fulfill the goals of § 3553(a).

### A.    *Mr. Scott's history and characteristics*

Mr. Scott grew up in a loving household in Denver, Colorado. Mr. Scott is cognizant of the affluent lifestyle he enjoyed while growing up, calling his childhood "ideal." Unfortunately, an ideal childhood does not provide any greater safeguard to keep someone from suffering from the pains and dangers associated with addiction.

Mr. Scott graduated from high school and after a short stint in college he set out on his own. First, he tried his hand at being a talent manager in Los Angeles, California. When Mr. Scott decided to move back to Colorado, he became involved in the legal hemp business with his father. Tragically, Mr. Scott's mother passed away in 2018. As Mr. Scott continued to operate his business his addiction got worse. But Mr. Scott takes pride in what he does and even though he is an addict, he was able to keep his business dealings legitimate. There is no trail of civil litigation or spurned investors coming after Mr. Scott because he conducts himself in the appropriate, ethical manner when doing business. Mr. Scott prides himself on being up to date with the latest technology and innovations, on his capabilities in operating a business, and he likes to think ahead.

Scott Cory Ritchie, the current CEO of Receptra, a company Mr. Scott co-founded, writes in support of Mr. Scott and his business acumen, noting that Mr. Scott "has devoted significant time, energy, and expertise to support not only the business itself but also the people behind it." *See* Attachment A. Mr. Ritchie goes on to detail Mr. Scott's willingness to take on whatever task is required to help the business succeed because of a genuine belief in the company's mission. *Id*.

His behavior in the business world is markedly different than his life as an addict. By implementing a strict probation supervision plan, the Court would restrain the liberty Mr. Scott has enjoyed in life to this point in a fashion that molds Mr. Scott into an even more capable person.

In fact, pretrial supervision has proven to benefit Mr. Scott. His father with whom he has resided during the supervision writes "I have seen such growth in his will and discipline." *See* Attachment A. To see such encouraging words coming from Mr. Scott's father is heartening as it has been Mr. Russell Scott III who has firsthand knowledge of the damage addiction has caused to his son. Mr. Russell Scott III arranged for the prior treatment and continued to arrange additional treatment because Mr. Russell Scott IV is so much more capable than his substance abuse issues have allowed him to be.

It is not just family that is aware of Mr. Scott's addiction issues. One of Mr. Scott's close personal friends, Brendan O'Brien, acknowledged Mr. Scott struggled with addiction, noting that for a time it did create a distance between them. The time Mr. Scott has been on pretrial supervision has led to Mr. Scott presenting himself with "a clarity, an honesty, and a level of self-awareness that reminds me of the young man I met all those

years ago." *See* Attachment A. Mr. Scott's positive attitude and immense capabilities reveals a person who is flawed, but not a lost cause. As family friend Alexander Brough says, "I have always known him to be trustworthy, intelligent, and resilient. His struggle has never defined the entirety of who he is." *See* Attachment A.

Mr. Scott has shown his ability to follow rules and express his respect for the law, as he faces the most serious punishment to which he has ever been subject. Mr. Scott does not minimize the severity of the offense, as he accepted responsibility and entered a plea of guilty. A probationary sentence is appropriate in light of the background of the struggles Mr. Scott has had which stands in stark contrast to his capability when sober. Mr. Scott admitted his intent to distribute a dangerous narcotic. But he also admitted to a significant addiction problem of his own. Imposing a sentence that aligns with the progress Mr. Scott has made will ensure he is punished for his activity but has the opportunity to achieve continued sobriety and contribute meaningfully to society.

B.    *Mr. Scott's offense characteristics*

**II.    The sentence requested would sufficiently promote respect for the law and afford adequate deterrence in light of the seriousness of the offense.**

Whether to vary from the guideline range based on policy considerations is only one factor that a court must consider in fashioning a defendant's individualized sentence, and appellate courts owe due deference to a district court's decision to deviate from the guidelines based sentencing factors when considered sentencing as a whole. *Huckins*, 529 F.3d at 1317 (acknowledging that the district court "has an unquestionable institutional

advantage over an appellate court to consider whether the facts of an individual case justify a variance").

In this case, Mr. Scott presents as a self-starter. His employment history consists of being his own boss. By a strict probationary sentence, Mr. Scott would be subject to the routine of having to answer to someone in a position of authority over his freedom and he has ultimately shown this type of routine has been beneficial for him. During the pendency of this case Mr. Scott has faithfully abided by the numerous conditions of his pretrial release.

There is no denying that Fentanyl ends and ruins lives. Mr. Scott, an addict himself, contributed to the nationwide problem by admitting his intention to distribute Fentanyl to others in addition to supporting his own habit. However, Mr. Scott is far from being a major purveyor of narcotics. His limited criminal history shows his lack of familiarity with complex criminal conspiracies often associated with drug trafficking. In fact, his PSIR scores his criminal history as "0" and places him in category "I", the lowest criminal history score one can have. While it is true that Mr. Scott has had previous contact with law enforcement, it is also true that those matters were of a much lower severity than the offense in this case, and Mr. Scott had no arrests for nearly 10 years before being arrested on this offense.

It can be countered that a limited criminal history is not necessarily indicative of someone living a clean life. It is admittedly true to the extent that Mr. Scott has been illegally using drugs for a long time. However, no crimes of violence or felonies show that Mr. Scott, but for his addiction, has lived in a way that comports with the norms of society.

8

Mr. Scott's support system and loving family have enabled him to combat his addiction, and Mr. Scott has participated in inpatient, outpatient, and psychiatric treatment for his substance abuse. While it could be argued that Mr. Scott has not paid heed to the lessons taught in the variety of treatments he has received, a more optimistic and appropriate view would be that Mr. Scott's history of substance abuse treatments serves as a building block towards his future. Addiction is a lifetime struggle.

Mr. Scott was also in possession of multiple loaded firearms during his arrest, which factors into his guidelines score due to his possession of Fentanyl. While having multiple weapons while in possession of narcotics is a dangerous combination, it should be noted that none of the firearms recovered were found to be stolen or were on Mr. Scott's person when he was stopped by law enforcement. Mr. Scott had access to weapons, but the traffic stop and arrest was cordial indicating that while a dangerous situation existed, the weapons found were not a risk to the officers in their apprehension of Mr. Scott.

While his offense is serious and he takes full responsibility for his actions, Mr. Scott is not a typical distributor of narcotics, either in scope or in purpose.

        *A.     The need to avoid unwarranted sentencing disparities.*

Mr. Scott's request that he be sentenced below the guidelines range is also supported by the need to avoid unwarranted sentence disparities between individual offenders whose offense and characteristics are similar in ways relevant to sentencing. Under current law, sentencing courts must consider the sentencing practices of other courts. *Kimbrough*, 552 U.S. at 108.

The guidelines give heavy weight to factors based on assumptions about the seriousness of the offense and general deterrence that are unfounded, particularly in this case. Here, a sentence within the guidelines range would create the type of sentence disparity that violates § 3553(a)(6) given that it fails to take into account any of Mr. Scott's characteristics, which demonstrate that imprisoning him to more than the statutory minimum punishment available is greater than necessary to fulfill Congress's sentencing goals. In this case, a substantial variance is therefore necessary to avoid unwarranted uniformity between Mr. Scott's case and dissimilar defendants who committed dissimilar, and far more egregious conduct. *See Gall*, 552 U.S. at 55 (in imposing a sentence of probation, district court appropriately "avoid[ed] unwarranted similarities").

Here, to say that a sentence anywhere near the guidelines range is "not greater than necessary," denotes that, despite all the mitigating factors distinguishing the nature of Mr. Scott's character and lessening his culpability, imprisonment is the correct sentence for an addict who can be of so much more value to society as a sober entrepreneur who has faced no serious criminal offenses before.

By properly counterbalancing the nature of the offenses against Mr. Scott's personal characteristics and individual circumstances, any sentence of imprisonment, would be "greater than necessary" to serve the goals mandated by § 3553(a). Mr. Scott has suffered and will continue to suffer substantial mental and personal anguish over his conviction, and the consequences of that conviction on those he loves, especially on his devoted father. Mr. Scott is more than just an addict. He understands actions have consequences. He accepts that he will receive just punishment for this very serious offense, but just

punishment is not a sentence inflated by the whims and fears of the masses that has no basis in deterrence or reducing the possibility of recidivism. A 5-year term of probation imposed by this Court is sufficient but not greater than necessary under the circumstances unique to Mr. Scott's case to serve the sentencing goals of § 3553(a).

## CONCLUSION

Congress itself acknowledged in the Sentencing Reform Act, and as set forth in the *Guidelines Manual*, "it is difficult to prescribe a single set of guidelines that encompasses the broad range of human conduct potentially relevant to a sentencing decision." In light of all the § 3553(a) factors, a 5 year probation sentence, and that Mr. Scott undergo any further treatment deemed necessary, is sufficient but no greater than necessary to serve the goals of Section 3553(a).

RESPECTFULLY SUBMITTED,

MONNAT & SPURRIER, CHARTERED

/s/ Eli O'Brien

By:    ELI O'BRIEN, #26519
       Attorney for Defendant Russell Scott IV
       Monnat & Spurrier, Chartered
       200 West Douglas, Suite 830
       Wichita, Kansas 67202
       (316) 264-2800
       Fax (316) 264-4785
       eli.obrien@monnat.com

## CERTIFICATE OF SERVICE

I hereby certify that on **April 29, 2026**, I electronically filed the foregoing with the clerk for the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mr. Oladotun O. Odeyemi, Assistant U.S. Attorney
ola.odeyemi@usdoj.gov

I further certify that I delivered the foregoing document by email to the following non-CM/ECF participants:

Ms. Evelyn A. Chirinos, U.S. Probation Officer
Evelyn_Chirinos@ksp.uscourts.gov

I further certify that I mailed the foregoing document by first-class mail to the following non-CM/ECF participants:

Mr. Russell Scott IV

/s/ Eli O'Brien
ELI O'BRIEN, #26519
Attorney for Defendant Russell Scott IV
Monnat & Spurrier, Chartered
200 West Douglas, Suite 830
Wichita, Kansas 67202
(316) 264-2800
Fax (316) 264-4785
eli.obrien@monnat.com